UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

HUMBERTO V. VAZQUEZ, RUBEN BERNAL,
and JEISON PEREZ RAMIREZ, *on behalf of
themselves and all other persons similarly situated*,

                    Plaintiffs,

          v.

MOLTO BENE BELLMORE, INC. *d/b/a* MOLTO
BENE, KARINA J. TERRAZAS, and MOLTO
BENE SOUTH BELLMORE, LLC, *d/b/a* MOLTO
BENE,

                   Defendants.

------------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-3681 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Humberto V. Vazquez, individually and on behalf of all others similarly

situated, commenced the above-captioned action against Defendants Molto Bene Bellmore, Inc.

("Molto Bene Bellmore")[1] and Karina J. Terrazas on June 25, 2018, alleging violations of the

Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Compl., Docket

Entry No. 1.) In the months that followed, Jeison Perez Ramirez and Ruben Bernal joined the

action as Plaintiffs, (Consent to Become Party, Docket Entry No. 8; Consent to Become Party,

Docket Entry No. 12); the Clerk of Court entered a certificate of default against Molto Bene

Bellmore, (Am. Clerk's Entry of Default, Docket Entry No. 35); and Plaintiffs amended their

Complaint to add Molto Bene South Bellmore, LLC ("Molto Bene South Bellmore") as a

---

[1] Defendant Molto Bene Bellmore is referred to in some places as "Molto Bene
Bellmore, Inc.," (*see, e.g.*, Answer, Docket Entry No. 10), and in other places as "Molto Bene
Bellmore, LLC," (*see, e.g.*, Bill of Sale, annexed to Decl. of Daniel Olivieri ("Olivieri Decl.") as
Ex. C, Docket Entry No. 48-1). For consistency, the Court refers to this Defendant as "Molto
Bene Bellmore" throughout this Memorandum & Order.

Defendant, claiming that it is a "successor company" to Defendant Molto Bene Bellmore, (Am. Compl. ¶ 9, Docket Entry No. 37). Molto Bene South Bellmore now moves to dismiss the Amended Complaint for failure to state a claim, arguing that it is not subject to Molto Bene Bellmore's liabilities and that the statute of limitations on Plaintiffs' claims has elapsed.[2] Plaintiffs oppose the motion.[3]

For the reasons set forth below, the Court grants Molto Bene South Bellmore's motion and dismisses the Amended Complaint as it pertains to Molto Bene South Bellmore, but grants Plaintiffs leave to amend the Amended Complaint as to their claims against Molto Bene South Bellmore.

## I.   Background

### a.   Initial proceedings

In June of 2018, Plaintiff Humberto V. Vazquez, on behalf of himself and similarly situated employees, filed his initial Complaint against Defendants Molto Bene Bellmore, doing business as restaurant Molto Bene, and Karina J. Terrazas, alleging violations of the FLSA and NYLL. (Compl.) In July of 2018, Jeison Perez Ramirez and Claudina de Maria Cruz requested and consented to join the action, (Consent to Become Party, Docket Entry No. 8; Consent to Become Party, Docket Entry No. 9), and in September of 2018, Ruben Bernal similarly joined the action, (Consent to Become Party, Docket Entry No. 12).

In October of 2019, counsel for Defendants moved for permission to withdraw from the case, explaining that "the attorney-client relationship . . . ha[d] broken down to the point of being

---

[2]  (Def.'s Mot. to Dismiss for Failure to State a Claim ("Def.'s Mot."), Docket Entry No. 48; Def.'s Mem. in Supp. of Def.'s Mot ("Def.'s Mem."), annexed to Def.'s Mot., Docket Entry No. 48-2; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 50.)

[3]  (Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Opp'n"), Docket Entry No. 49.)

irreconcilable." (Mem. in Supp. of Mot. to Withdraw 3, annexed to Mot. to Withdraw, Docket Entry No. 21-1.) In October of 2019, Magistrate Judge Anne Y. Shields granted the motion to withdraw and ordered Molto Bene Bellmore to obtain new counsel and Terrazas to obtain new counsel or inform the Court of her intention to proceed pro se by December 2, 2019. (Order dated Oct. 30, 2019.) Neither Molto Bene Bellmore nor Terrazas obtained new counsel.

In December of 2019, the Clerk of Court entered a certificate of default against Molto Bene Bellmore and Terrazas. (Clerk's Entry of Default, Docket Entry No. 30.) In January of 2020, Magistrate Judge Shields issued a sua sponte report and recommendation, recommending that "the notation of default be amended to reflect only the default of Molto Bene Bellmore, Inc. and not that of Karina J. Terrazas." (Report & Recommendation dated Jan. 7, 2020 ("R&R") 3, Docket Entry No. 31.) The R&R noted that unlike Molto Bene Bellmore, Terrazas "may proceed *pro se*." (*Id.*) Further, although she had "not complied with the order that she advise the Court as to whether she will be securing counsel," Terrazas had "properly answered and appeared in this case." (*Id.*) In January of 2021, the Court adopted the R&R and ordered the Clerk of Court to amend the Certificate of Default accordingly. (Order Adopting R&R, Docket Entry No. 34; *see* Am. Clerk's Entry of Default.)

In December of 2019, Plaintiffs moved to amend the Complaint. (Mot. to Amend, Docket Entry No. 28.) They explained that they intended to add Ruben Bernal and Jaison Perez as Plaintiffs and to "add[] as a defendant the corporation presently doing business as Molto Bene, . . . which was formed in February [of] 2019 and has continued operations without any material change, and is a 'successor' entity to . . . Molto Bene Bellmore, Inc." (*Id.*) Magistrate Judge Shields granted Plaintiffs' motion. (Order dated Mar. 9, 2020.)

### b.   Amended Complaint

In July of 2021, Plaintiffs filed an Amended Complaint that included Molto Bene South Bellmore as a Defendant along with Molto Bene Bellmore and Terrazas. (Am. Compl.) The Amended Complaint alleges that "[u]pon information and belief," Molto Bene South Bellmore "is a successor company to Molto Bene Bellmore, Inc., owned and operated through the same corporate management," and "acquired and has continued, without interruption or substantial change, the business operations of the predecessor, and is liable for the debts and liabilities of its predecessor." (*Id.* at ¶¶ 10–11.) Terrazas "exercised sufficient control over Molto Bene's day-to-day operations as to be considered an employer of Plaintiffs under the FLSA and New York Labor Law." (*Id.* at ¶¶ 12, 17.)

Vazquez was employed at Molto Bene from March of 2016 through May 20, 2018, with two brief interruptions in 2017; Bernal was employed at Molto Bene from December of 2016 through July of 2017; and Ramirez was employed at Molto Bene from February of 2016 through July of 2016, with a brief interruption in 2016. (*Id.* at ¶¶ 20–22.) Plaintiffs allege that "[a]t all relevant times," Defendants "knowingly and willfully failed to pay Plaintiffs lawfully earned wages," "lawfully earned overtime compensation," and "'spread of hours' premiums" in contravention of the FLSA and NYLL. (*Id.* at ¶¶ 24–26.)

### c.   Molto Bene South Bellmore's motion

On February 11, 2022, Molto Bene South Bellmore moved to dismiss the Amended Complaint. (Def.'s Mot.) The motion to dismiss included a declaration by its counsel Daniel Olivieri, and, annexed to the declaration, the following exhibits: Plaintiffs' Amended Summons and Complaint, (Am. Summons & Compl., annexed to Olivieri Decl. as Ex. A, Docket Entry No. 48-1); Molto Bene South Bellmore's Articles of Incorporation (Articles of Incorporation,

annexed to Olivieri Decl. as Ex. B, Docket Entry No. 48-1); the Bill of Sale reflecting the sale

from Molto Bene Bellmore to Molto Bene South Bellmore of "all right, title and interest . . . in

and to the assets of the restaurant," (Bill of Sale, annexed to Olivieri Decl. as Ex. C, Docket

Entry No. 48-1); the Asset Purchase Agreement governing the same transaction, (Asset Purchase

Agreement, annexed to Olivieri Decl. as Ex. D, Docket Entry No. 48-1); Molto Bene South

Bellmore's Certificate of Authority with the New York State Department of Taxation and

Finance, (Certificate of Authority, annexed to Olivieri Decl. as Ex. E, Docket Entry No. 48-1);

Molto Bene South Bellmore's New York liquor license, (Liquor License, annexed to Olivieri

Decl. as Ex. F, Docket Entry No. 48-1); the termination of Molto Bene Bellmore's lease

agreement, dated April 8, 2019, (Termination of Lease Agreement, annexed to Olivieri Decl. as

Ex. G, Docket Entry No. 48-1); Molto Bene South Bellmore's lease agreement for the same

property, also dated April 8, 2019, (Lease Agreement, annexed to Olivieri Decl. as Ex. H,

Docket Entry No. 48-1); and three cases from this district, (*Vazquez v. Ranieri Cheese Corp.*,

No. 07-CV-464, 2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010), annexed to Olivieri Decl. as Ex.

I, Docket Entry No. 48-1; *Peralta v. WHM Tool Grp Inc.*, No. 04-CV-3826, 2005 WL 2002454

(E.D.N.Y. Aug. 19, 2005), annexed to Olivieri Decl. as Ex. J, Docket Entry No. 48-1; *Marte v.*

*Westbury Mini Mart, Inc.*, No. 16-CV-53, 2017 WL 9485667 (E.D.N.Y. Jan. 18, 2017), annexed

to Olivieri Decl. as Ex. K, Docket Entry No. 48-1). Molto Bene South Bellmore also attached an

affidavit by its managing member Artur Biba.[4] The affidavit claims that Biba and the other

---

[4] Biba incorrectly states in the affidavit that he is the managing member of Molto Bene Bellmore. (Aff. of Artur Biba ("Biba Aff.") ¶ 1, annexed to Def.'s Mot., Docket Entry No. 48-3.) His later affidavit corrects this error. (Reply Aff. of Artur Biba ("Biba Reply Aff.") ¶ 1 n.1, annexed to Def.'s Reply, Docket Entry No. 50-1.)

managing member, Valon Beqirim,[5] "had no ownership, control, or management" in Molto Bene

Bellmore "at any time." (Aff. of Artur Biba ("Biba Aff.") ¶ 8, annexed to Def.'s Mot., Docket

Entry No. 48-3.) The Biba Affidavit also states that Terrazas, the owner of Molto Bene

Bellmore, "had no ownership control or management" in Molto Bene South Bellmore. (*Id.* at ¶¶

4, 8.) Biba claims that Molto Bene South Bellmore did not exist until February 8, 2019, and that

Plaintiffs never worked for Molto Bene South Bellmore, "as it did not exist during the period of

time that the Plaintiffs allege they were not paid." (*Id.* at ¶¶ 11, 19-1.)[6] Moreover, he and Mr.

Beqirim "had no [n]otice of Plaintiffs' claims" when they purchased Molto Bene Bellmore's

assets, nor did they have any knowledge "that there was even an issue concerning wages." (*Id.* at

¶ 19-2.)

 Molto Bene South Bellmore also attached a reply affidavit by Biba to its memorandum

replying to Plaintiff's opposition. (Reply Aff. of Artur Biba ("Biba Reply Aff."), annexed to

Def.'s Reply, Docket Entry No. 50-1.) In his reply affidavit, Biba claims that the documents

attached as exhibits to Molto Bene South Bellmore's motion "are kept and maintained by" Molto

Bene South Bellmore "as business records," and "are true and accurate copies of those records."

(*Id.* at ¶ 2.) He claims that he and his partner "were just employees of Molto Bene Bellmore,"

namely a food runner and waiter, and "had no management control, supervision, or anything else

with regard to Molto Bene Bellmore . . . operations." (*Id.* at ¶ 5.) Nor had he or his partner

"heard of any [] complaints" from staff while employed at Molto Bene Bellmore. (*Id.* at ¶ 6.)

---

 [5] Biba's initial affidavit refers to this individual as "Valon Beqirim," (Biba Aff. ¶¶ 3, 8),
but his reply affidavit refers to him as "Valon Beqiri," (Biba Reply Aff. ¶ 5). It is unclear which
name is accurate.

 [6] The Biba Affidavit has two paragraphs numbered 19. For consistency of reference, the
Court refers to the first as 19-1 and the second as 19-2.

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N.Y.*

*Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145

(2d Cir. 2020).  A complaint must plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d

533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir.

2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v.*

*Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal

conclusions."  *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b.  Successor liability

Molto Bene South Bellmore claims that the Biba Affidavit and the documents concerning

the sale of the business "clearly reflect that there was a change of ownership and management

without any continuity whatsoever between" Molto Bene Bellmore and Molto Bene South

Bellmore.  (Def.'s Mem. 4.)  It argues that under the common law test of successor liability, "a

corporation acquiring the assets of another corporation does not inherit the [s]eller's liabilities."

(Def.'s Reply 2.)  Molto Bene South Bellmore further argues that even under the alternative

substantial continuity test, "the Amended Complaint is devoid of any of the requisite elements

for successor liability." (Def.'s Mem. 5; *see* Def.'s Reply 4–5.) First, Plaintiffs have not pled that "notice was given to Defendant . . . of the Plaintiffs' action or even potential liability of the claim." (Def.'s Mem. 5.) Second, Plaintiffs have not pled that "the predecessor has the ability to provide relief." (*Id.*) Third, Plaintiffs have not pled that "there has been a substantial continuity of business operations between the predecessor and the successor." (*Id.*)

Plaintiffs argue that Molto Bene South Bellmore relies on the Biba Affidavit and the Olivieri declaration, "to which is attached over one hundred sixty (160) pages of documents, almost all of which are extrinsic to the pleadings." (Pls.' Opp'n 3–4.) They claim that these documents "are not properly considered on this motion." (*Id.* at 4.) In addition, they claim, first, that "Plaintiffs have not had an opportunity to question Biba about his relationship with the corporate entities." (*Id.* at 3.) Second, they argue that Olivieri "is presumably not a manager of the corporate defendant, and as such, not a witness with knowledge as to what he has attached, and has no basis to authenticate" the attachments. (*Id.* at 4.) Third, Plaintiffs claim that the attachments "are not referenced nor relied upon in the" Amended Complaint, "and are not the kind of documents that may be judicially noticed." (*Id.*) Fourth, Plaintiffs claim that the documents "raise questions not resolvable on a pre-answer motion to dismiss"; for example, the asset purchase agreement appears to be dated or mis-dated to 2016, three years prior to closing. (*Id.*) Plaintiffs argue that the Court "should not convert [Molto Bene South Bellmore's] motion to one for summary judgment when [P]laintiffs have not yet had the benefit of discovery." (*Id.*) They also claim that the Court should exclude the Biba Affidavit "as self-serving extrinsic evidence." (*Id.*)

In addition, Plaintiffs claim that the Amended Complaint sufficiently alleges successor liability. (*Id.* at 5.) They argue that "[a]lthough the Second Circuit has yet to rule directly on

whether" the substantial continuity test should apply to determining successor liability in a FLSA case, "the majority view[] is that [it] should." (*Id.* at 7–12.) Plaintiffs argue that "all of the factors" considered under the substantial continuity test "suggest a finding of successor liability against" Molto Bene South Bellmore. (*Id.* at 13.) Plaintiffs request "a determination as to the standard of successor liability to be applied in this case," and ask that the Court "postpone application of that standard" until there are more facts in the record. (*Id.* at 6.)

### i.   Materials outside the pleadings

In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))). Disputes regarding the authenticity or accuracy of documents preclude a court's consideration on a motion to dismiss. *See DiFolco*, 622 F.3d at 111 (stating that to consider documentary evidence on a motion to dismiss, "it must be clear on

the record that no dispute exists regarding the authenticity or accuracy of the document" (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006))); *Beer*, 463 F.3d at 134 ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." (first citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); and then citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001))); *Structured Asset Sales, LLC v. Sheeran*, No. 20-CV-4329, 2021 WL 1199495, at *5 (S.D.N.Y. Mar. 30, 2021) (same); *DeLeon v. Teamsters Loc. 802, LLC*, No. 20-CV-24, 2021 WL 1193191, at *8 (E.D.N.Y. Mar. 29, 2021) (same); *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 381 (E.D.N.Y. 2015) (stating that in order to consider documentary evidence on a motion to dismiss, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible" (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221 (N.D.N.Y. 2014))).

In considering Molto Bene South Bellmore's motion to dismiss, the Court may of course consider the Amended Complaint, regardless of whether it is attached by Molto Bene South Bellmore as an exhibit. *See Strock*, 982 F.3d at 63 ("In considering a motion to dismiss for failure to state a claim, 'the district court is normally required to look only to the allegations on the face of the complaint.'" (quoting *Roth*, 489 F.3d at 509)).

The Court declines to take judicial notice of the Articles of Incorporation, Bill of Sale, Asset Purchase Agreement, Certificate of Authority, Liquor License, Termination of Lease Agreement, or Lease Agreement, or the three cases submitted by Molto Bene South Bellmore from this District because they do not bear on the issues relevant to its determination of this

motion.[7]  The Court notes that although the documents are not attached to, incorporated into, or

integral to the Amended Complaint, some — in particular the cases from other courts and the

documents filed with the State of New York — may nonetheless be amenable to judicial notice.

*See Lewis v. M&T Bank*, No. 21-CV-933, 2022 WL 775758, at *2 n.4 (2d Cir. Mar. 15, 2022)

("We regularly take judicial notice of agency documents on official websites."); *Kramer v. Time*

*Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of

documents filed in other courts . . . . not for the truth of the matters asserted in the other

litigation, but rather to establish the fact of such litigation and related filings."); *Haru Holding*

*Corp. v. Haru Hana Sushi, Inc.*, No. 13-CV-7705, 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15,

2016) (taking judicial notice of "the public [e]ntity [i]nformation provided by the New York

State Department of State, Division of Corporations Corporate and Business Entity Database");

*TicketNetwork, Inc. v. Darbouze*, 135 F. Supp. 3d 442, 449 (D. Conn. 2015) (stating that courts

may "take judicial notice of matters of public record, including documents filed with public

bodies, such as articles of incorporation").  Regardless, the Court does not take judicial notice of

these documents because they do not bear on the issues before the Court.  As described below,

these issues are: whether Molto Bene South Bellmore had notice of Molto Bene Bellmore's

alleged violations of the FLSA and NYLL or of Plaintiffs' complaints; whether Molto Bene

Bellmore is capable of providing relief for the alleged violations; and whether Molto Bene South

Bellmore "substantially continued" Molto Bene Bellmore's business operations — including

whether Molto Bene Bellmore and Molto Bene South Bellmore used the same physical facility,

---

[7]  Molto Bene South Bellmore does not seem to attach the three cases because their
existence shows some fact relevant to its motion, but rather because they support its legal
arguments.  (*See* Def.'s Mem.)  The Court does not take judicial notice of these cases, but notes
that it may consider them, as well as any other relevant cases, in its legal analysis.

work force, and personnel.  *See Rotthoff v. N.Y. State Cath. Health Plan, Inc.*, No. 19-CV-4027, 2020 WL 5763862, at \*6 (E.D.N.Y. Sept. 28, 2020) (considering nine factors to assess successor liability, including "(1) whether the successor company had notice of the charge, (2) the ability of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operations, (4) whether the new employer uses the same plant, (5) whether he uses the same or substantially the same work force, (6) whether he uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working conditions, (8) whether he uses the same machinery, equipment and methods of production and (9) whether he produces the same product" (quoting *De Ping Song v. 47 Old Country, Inc.*, 975 F. Supp. 2d 288, 294 (E.D.N.Y. 2013), *vacated on other grounds*, *De Ping Song v. Inhae Corp.*, 578 F. App'x 22 (2d Cir. 2014))); *see also De Ping Song*, 975 F. Supp. 2d at 297 (explaining that the last seven factors of the substantial continuity test are "aimed at determining the overall question of substantial continuity of the predecessor's business").  As described below, Plaintiffs have sufficiently alleged facts related to the third issue, and the mere existence of the documents attached by Molto Bene South Bellmore does not resolve the first two issues.  *See Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 477 (S.D.N.Y. 2015) ("When the [c]ourt takes judicial notice of a document, it takes notice of the document's existence, not the truth of the statements asserted in the document.").  Courts need not take judicial notice of irrelevant facts.  *See Fraterrigo v. Akal Sec., Inc.*, 376 F. App'x 40, 42 (2d Cir. 2010) (declining to take judicial notice of an irrelevant fact); *Anthes v. N.Y. Univ.*, No. 17-CV-2511, 2018 WL 1737540, at \*4 (S.D.N.Y. Mar. 12, 2018) (stating that "a court can only sensibly take judicial notice of facts relevant to the matters before the court" and collecting cases).

Unlike the other documents Molto Bene South Bellmore attaches to its motion, the Biba Affidavit does contain claims that are relevant to the disposition of this motion.  However, the Court declines to consider the Biba Affidavit because the affidavit is outside of the pleadings and therefore is not subject to judicial notice.  Unlike some of the documents described above, the affidavit is not a decision by another court or public record filed to a government agency. *See Joyner v. Alston & Bird LLP*, No. 21-CV-8549, 2022 WL 913061, at *2 (S.D.N.Y. Mar. 29, 2022) (noting that the court "could not . . . consider any 'supporting affidavits'" on a motion to dismiss), *opinion clarified*, 2022 WL 997385 (S.D.N.Y. Apr. 1, 2022); *Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651, 2021 WL 3425378, at *6 (E.D.N.Y. Aug. 4, 2021) ("The Court . . . declines to consider any factual allegations in the affidavits submitted by the parties on this motion because these affidavits are outside of the pleadings in this case and are not subject to judicial notice."); *Kaplan v. Wings of Hope Residence, Inc.*, No. 18-CV-2972, 2018 WL 6437069, at *4 (E.D.N.Y. Dec. 7, 2018) (declining to consider "additional factual assertions" in affidavits submitted on motion to dismiss when the affidavits "assert[ed] facts in greater detail than those in the complaint" and were not attached to the complaint, integral to the complaint, or material of which judicial notice can be taken (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000))).

### ii. Conversion to summary judgment

In converting a motion to dismiss, "[t]he essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985), *cert. denied*, 475 U.S. 1015

(1986)); *see also Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014)
("[A] district court acts properly in converting a motion . . . into a motion for summary judgment
when the motion presents matters outside the pleadings" and the court gives "sufficient notice to
an opposing party and an opportunity for that party to respond." (first alteration in original)
(quoting *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009))); *Galiotti v. Green*, 475 F.
App'x 403, 404 (2d Cir. 2012) (same); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d
Cir. 1995) (noting that the party opposing the motion must be given "sufficient notice" and an
opportunity to respond).

The Court declines to convert Molto Bene South Bellmore's motion to dismiss to a
motion for summary judgment. Only Molto Bene South Bellmore has submitted materials
outside of the pleadings to the Court, and the Court has given no indication until now that it will
consider either party's extrinsic evidence. Conversion to summary judgment would therefore be
improper at this stage. *Sahu*, 548 F.3d at 69 (finding that conversion was inappropriate when it
was unclear at the close of briefing that the district court would accept the movant's invitation to
consider extrinsic evidence and convert the motion into summary judgment); *First Fin. Ins. Co.
v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999) (noting that "care should,
of course, be taken by the district court to determine that the party against whom summary
judgment is rendered has had a full and fair opportunity to meet the proposition that there is no
genuine issue of material fact to be tried" (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73–74 (2d
Cir. 1996))); *Dale v. Hahn*, 440 F.2d 633, 638 (2d Cir. 1971) (finding district court had erred
where it considered affidavits submitted by the defendants but "gave no indication that [it] was
going to consider anything but the pleadings").

### iii.   Successor liability

"Under the general common law rule, 'a corporation that merely purchases for cash the assets of another corporation does not assume the seller corporation's liabilities;'" however, the Supreme Court instructs courts to 'impose[] liability upon successors beyond the bounds of the common law rule in a number of different employment-related contexts in order to vindicate important federal statutory policies.'" *N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 176 (2d Cir. 2022) (first quoting *Stotter Div. of Graduate Plastics Co. v. Dist. 65*, 991 F.2d 997, 1002 (2d Cir. 1993); and then quoting *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1326 (7th Cir. 1990)), *cert. denied*, No. 21-CV-1521, 2022 WL 2295614 (June 27, 2022); *see also Kim v. DK Cosmetics*, No. 19-CV-9079, 2022 WL 540675, at \*6 (S.D.N.Y. Feb. 23, 2022) ("[A]bsent a viable basis to impose successor liability . . . a corporation cannot be directly liable for conduct that occurred before it even existed.").  "Federal courts sitting in New York employ either a New York common law standard or a 'substantial continuity' test in determining whether a defendant may be held liable for a previous employer's labor law violations." *Pena v. Metro. Wireless Anandpur Inc.*, No. 21-CV-2239, 2021 WL 5054368, at \*5 (S.D.N.Y. Nov. 1, 2021) (quoting *Moreno v. Ramos*, No. 17-CV-9439, 2021 WL 637563, at \*3 (S.D.N.Y. Feb. 17, 2021)).  The Second Circuit has not "decided whether the substantial continuity test or the traditional test applies to FLSA claims." *Li v. New Ichiro Sushi Inc.*, No. 20-CV-1783, 2021 WL 6105491, at \*2 (2d Cir. Dec. 21, 2021).  "Under the common law test, a business buyer is liable for the seller's debts only when '(1) a buyer . . . formally assumes a seller's debts; (2) [the] transactions [are] undertaken to defraud creditors; (3) a buyer . . . de facto merged with a seller; [or] (4) a buyer . . . is a mere continuation of a seller.'" *Diaz v. Slayton One Cleaner Inc.*, No. 17-CV-

1311, 2018 WL 4935831, at *3 (S.D.N.Y. Oct. 11, 2018) (alterations in original) (quoting *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003)).  Under the substantial continuity test, the court looks to:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Pareja v. 184 Food Corp.*, No. 18-CV-5887, 2021 WL 3109621, at *9 n.9 (S.D.N.Y. July 22, 2021) (quoting *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012)). "Although no one factor" of the substantial continuity test "is determinative, courts have recognized that the first two factors, viz. notice of the claim prior to acquisition and the ability of the predecessor to provide relief, [are] 'critical.'"  *Marte*, 2017 WL 9485667, at *9 (quoting *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014)); *see also Rotthoff*, 2020 WL 5763862, at *7 ("Of the test's nine factors, 'courts have considered the first two factors — notice and the ability of the predecessor to provide relief — to be indispensable.'" (quoting *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017))); *Feng Chen v. Patel*, No. 16-CV-1130, 2019 WL 2763836, at *5 (S.D.N.Y. July 2, 2019) (noting that the first "two factors are 'indispensable to the imposition of successorship liability under the "substantial continuity" test'"); *Diaz*, 2018 WL 4935831, at *6 (recognizing "the first two factors as more significant than the others"); *Abumi Sushi Inc.*, 262 F. Supp. 3d at 89 (noting that "courts have considered the first two factors . . . to be indispensable" and collecting cases).

Molto Bene South Bellmore appears to argue that there is no liability under either test. (Def.'s Mem. 3–5; Def.'s Reply 2–5.)  Plaintiffs argue that the Court should apply the substantial continuity test, but that "this issue is not ripe for final determination based upon the record," and that after determining that the substantial continuity test will be applied, the Court should "postpone application of that standard to facts necessarily not in the record on a pre-answer motion to dismiss."  (Pls.' Opp'n 6–12.)  Plaintiffs further argue that "all of the factors" considered under the substantial continuity test "suggest a finding of successor liability." (*Id.* at 13–16.)

The Court does not decide between the tests at this time because, even under the less "rigorous" substantial continuity test, Plaintiffs have not sufficiently alleged that successor liability applies to Molto Bene South Bellmore.  *See Gallo v. Wonderly Co., Inc.*, No. 12-CV-1868, 2014 WL 36628, at *13 (N.D.N.Y. Jan. 6, 2014) (referring to the "traditional common law test" as "more rigorous"); *see also Abumi Sushi Inc.*, 262 F. Supp. 3d at 89 (noting that "[t]he 'substantial continuity' test is broader than the traditional common-law/New York test"); *Franco v. Jubilee First Ave. Corp.*, No. 14-CV-7729, 2016 WL 4487788, at *9 (S.D.N.Y. Aug. 25, 2016) ("The substantial continuity test is more flexible than the traditional common law test."); *Battino*, 861 F. Supp. 2d at 403–04 (choosing to apply the substantial continuity test rather than the common law test because of FLSA's "remedial" purpose, Congress' intent that the statute "have the widest possible impact," and the Second Circuit's "instruction to use a 'flexible' approach in applying FLSA").  The Amended Complaint alleges that, "[u]pon information and belief," Molto Bene South Bellmore is a successor company to Molto Bene Bellmore, "owned and operated through the same individual or corporate management," (Am. Compl. ¶ 9), and that Molto Bene South Bellmore "acquired and has continued, without

interruption or substantial change, the business operations of the predecessor, and is liable for the debts and liabilities of its predecessor," (*id.* at ¶ 11).  It also alleges that Molto Bene South Bellmore, like Molto Bene Bellmore, does business "as Molto Bene, located at 2520 Merrick Road in Bellmore, New York."  (*Id.* at ¶¶ 6, 7, 10.)

### 1.  Notice

The Amended Complaint does not allege that Molto Bene South Bellmore had notice of Plaintiffs' claim against Molto Bene Bellmore.  *See Marte*, 2017 WL 9485667, at *9 (noting that the amended complaint was "silent with regard to notice given to the subsequent owners").  Nor can the Court infer that Molto Bene South Bellmore had notice of the claim based on the statement in the Amended Complaint that Molto Bene South Bellmore and Molto Bene Bellmore are "owned and operated through the same individual or corporate management," as this claim is a "mere conclusory statement" that is "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 663–64.

### 2.  Ability to provide relief

In addition, Plaintiffs have failed to allege the second factor of the substantial continuity test: the inability of Molto Bene Bellmore to provide relief.  *See Marte*, 2017 WL 9485667, at *9 (noting that the amended complaint was "silent as to the ability of the predecessor companies to provide relief").  In their opposition to Defendant's motion to dismiss, Plaintiffs argue that Molto Bene Bellmore cannot provide relief because it "is not engaged in business and transferred *all* of its assets" to Molto Bene South Bellmore.  (Pls.' Opp'n 14–15.)  However, these allegations are not included in the Amended Complaint.[8]  Plaintiffs also claim that Molto Bene Bellmore's

---

[8]  Nor would the documents attached as exhibits to Molto Bene South Bellmore's motion shed light on this question.  Not only do the documents fail to establish whether Molto Bene

"purported shareholder[] willfully defaulted," (*id.* at 15), presumably referring to Molto Bene Bellmore's default in this action, (*see* Order Adopting R&R).  Molto Bene Bellmore's default does not necessarily mean, however, that it is unable to provide relief.  Plaintiffs appear to acknowledge this, as they also argue that "[i]n the event there is potential to recover from the predecessor or its shareholder," Biba's purchase agreement "contains strong indemnification provisions which he can use to recover for liability as well as litigation costs and expenses." (Pls.' Opp'n 15.)  However, the terms of the purchase agreement are not contained in the Amended Complaint, nor will the Court consider the agreement on Molto Bene South Bellmore's motion to dismiss — a result that Plaintiffs elsewhere urge.  (*Id.* at 3–5.)

### 3.   Other factors

Because Plaintiffs fail to allege facts that give rise to an inference that Molto Bene South Bellmore had notice of the claims or that Molto Bene Bellmore is unable to provide relief, the Court need not consider whether they have pleaded sufficient facts that there has been a substantial continuity of business operations.  The Court therefore dismisses the Amended Complaint as it pertains to Molto Bene South Bellmore.  *See Marte*, 2017 WL 9485667, at *9 (finding that the plaintiffs had failed to allege successor liability under substantial continuity test because they had failed to allege that the successor companies had notice of a potential claim or that the predecessor companies were unable to provide relief).

---

Bellmore is still an active corporation or whether it retains assets beyond those it sold to Molto Bene South Bellmore, but even if the documents did purport to resolve these questions, "[i]f [a] court takes judicial notice, it does so in order 'to determine *what* statements [the documents] contained' — but . . . '*not for the truth of the matters asserted.*'"  *Roth*, 489 F.3d at 509.

###### c. Statute of limitations

Molto Bene South Bellmore argues that the Amended Complaint should be dismissed because it was filed after the expiration of the statute of limitations. (Def.'s Mem. 5–6.) It notes that Molto Bene South Bellmore was first identified as a defendant in the Amended Complaint and that the Amended Complaint "was filed on July 19, 2021." (*Id.*) The first Plaintiff to begin working at Molto Bene Bellmore began working in March of 2016, and the last Plaintiff to leave his employment with Molto Bene Bellmore left in May of 2018. (*Id.* at 6.) Molto Bene South Bellmore notes that under FLSA, the statute of limitations for non-willful violations is two years, (*id.* at 5), and argues that it could not be held liable for willful violations because Plaintiffs had left the restaurant before Molto Bellmore South Bellmore purchased its assets. (Def.'s Reply 5–6.) It further argues that the Court lacks supplemental jurisdiction over the state claims if the FLSA claims are dismissed and therefore should dismiss the Amended Complaint in its entirety. (*Id.* at 6.)

Plaintiffs do not respond to this argument. (*See* Pls.' Opp'n; Def.'s Reply 5.)

Under the FLSA, claims for non-willful violations must be filed within two years and willful violations must be filed within three years. 29 U.S.C. § 225(a); *see also Byer v. Peridontal Health Specialists of Rochester, PLLC*, No. 20-CV-1751, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" (quoting *Parada*, 753 F.3d at 70)). "The cause of action for FLSA and NYLL claims accrues on the next regular payday following the work period when services are rendered." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 198 (2d Cir. 2013); *see also Lanzetta v. Florio's Enters.,*

*Inc.*, 763 F. Supp. 2d 615, 622 n.10 (S.D.N.Y. 2011) ("A claim for unpaid wages accrues on the date on which the employee should have been paid for services rendered but was not." (citing *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005))).

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Under Rule 15(c), an amendment to a pleading to change the party against whom a claim is asserted will relate back if (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading," (2) the parties to be brought in "received such notice of the action that [they] will not be prejudiced in defending on the merits," (3) those parties "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity," and (4) elements (2) and (3) were satisfied within ninety days of the filing of the original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B)–(C); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995).

As a threshold point, the Court cannot determine at this stage of the litigation that Molto Bene South Bellmore may not be held liable for willful violations. Molto Bene South Bellmore argues that it is "undisputed" that it "could not have been willful in its violations" because Plaintiffs were no longer working at the restaurant by the time Molto Bene South Bellmore "purchased the assets of Molto Bene Bellmore." (Def.'s Reply 5–6.) However, this argument misunderstands the nature of successor liability, which "hold[s] a new employer to the obligations of a former employer." *N.Y. State Teamsters Conf. Pension & Ret. Fund*, 24 F.4th at 177. If the evidence ultimately shows that Molto Bene Bellmore committed willful FLSA

violations against Plaintiffs, and if successor liability attaches to Molto Bene South Bellmore for
these violations, then Molto Bene South Bellmore will be liable for willful violations even
though it did not purchase the restaurant until after Plaintiffs were no longer working there.

   The Court cannot determine at this stage whether the Amended Complaint relates back to
the filing of the initial Complaint in June of 2018.  Specifically, as described in the prior section,
it is not clear from the Amended Complaint whether and when Molto Bene South Bellmore had
notice of the original Complaint.  By raising the statute of limitations defense in its motion to
dismiss, Molto Bene South Bellmore has avoided waiving the defense.  *See Litton Indus., Inc. v.
Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751–52 (2d Cir. 1992) ("A claim that a statute of
limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the
answer to the complaint." (citing Fed. R. Civ. P. 8(c))); *Rosario v. Local 1106 Transport Works
of Am.*, 29 F. Supp. 3d 153, 158 (E.D.N.Y. 2014) (explaining that a defendant may raise a statute
of limitations defense in a pre-motion answer to dismiss).  However, the Court declines to
determine whether Plaintiffs' claims are barred by the statute of limitations until more facts are
available to make this determination.  Courts have recognized that, "[b]ecause a statute of
limitations defense can be highly fact dependent, '[a] motion to dismiss is often not the
appropriate stage to raise affirmative defenses like the statute of limitations.'"  *Canon U.S.A.,
Inc. v. Calvin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016) (quoting *Ortiz v. City
of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010)); *see also Sterling v. Interlake Indus.*,
154 F.R.D. 579 (E.D.N.Y. 1994).

   In *Sterling*, the plaintiff was injured by a storage rack and sued Interlake Industries Inc.,
claiming it had negligently produced the storage rack that injured her.  154 F.R.D. at 581.  The
defendant moved for summary judgment, arguing that the storage rack had actually been

manufactured and distributed by Redirack, a "wholly owned subsidiary" of its corporate predecessor, which had since been merged into another company. *Id.* at 582. The plaintiff moved to amend the complaint to add Redirack as a defendant. *Id.* at 583–84. The court stated that its task was to determine "whether the amendment adding Redirack is futile because the action against Redirack would be barred by the statute of limitations," and that this issue in turn depended on "whether the conditions allowing the amendment to relate back to the time the complaint was filed . . . have been met." *Id.* at 589. However, there was "some doubt" whether the notice requirement had been met. *Id.* The plaintiff alleged that Redirack's successor "had notice of the action against Interlake" through "the directors of Interlake who also serve on the board of Redirack and/or" its successor, but the court concluded that the plaintiff had failed to set forth who these directors were. *Id.* It granted the plaintiff leave to amend her complaint "without prejudice" to the right of Redirack and its successor to assert the statute of limitations defense, and ordered the plaintiff to "set forth specifically who the directors of the two companies are and how notice was effected through the overlap in the boards of directors." *Id.* at 590; *see also Ringrose v. Engelberg Huller Co., Inc.*, 692 F.2d 403 (6th Cir. 1982) (after district court found that amended complaint against alleged successor corporation did not relate back to original complaint, remanding for a determination whether the defendant corporations were successor corporations and therefore knew or should have known of the original action); *Paulsen v. Abbott Lab'ys*, 368 F. Supp. 3d 1152 (N.D. Ill. 2019) (considering whether an amended complaint against a successor in interest related back to an earlier complaint against the predecessor in interest, and ultimately deferring the question until summary judgment, which would "permit the parties to develop the factual record regarding any prejudice that [the successor company] may have incurred as a result of the delay in being added as a defendant in

23

this case").  As in those cases, whether Plaintiffs' claim against Molto Bene South Bellmore is time-barred is not ripe for determination on a motion to dismiss.

### d. Leave to Amend

Neither Plaintiffs nor Defendant address whether the Court should grant Plaintiffs leave to amend the Amended Complaint.

Under Rule 15(a) of the Federal Rules of Civil Procedure, district courts should "'freely give' leave to amend [a complaint] 'when justice so requires.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)); *see also Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016).  The Court grants Plaintiffs leave to amend the Amended Complaint to add allegations giving rise to an inference that Molto Bene South Bellmore is liable as Molto Bene Bellmore's successor.

Plaintiff shall file a second Amended Complaint, if any, within thirty days of the date of this Memorandum and Order.  If Plaintiff elects not to file a second Amended Complaint or fails to file a second Amended Complaint within thirty days of this Memorandum and Order, the Court will dismiss all claims as they pertain to Molto Bene South Bellmore.

### III.   Conclusion

For the foregoing reasons, the Court grants Molto Bene South Bellmore's motion to dismiss the Amended Complaint as it pertains to Molto Bene South Bellmore only.  The Court grants Plaintiffs thirty days' leave to amend the Amended Complaint as to their claims against Molto Bene South Bellmore.

Dated:  August 26, 2022
       Brooklyn, New York

                          SO ORDERED:


                           s/ MKB
                         MARGO K. BRODIE
                         United States District Judge